FILED

AUG 16 2023

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Aug 16, 2023

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

JOSHUA MCALLISTER

1:23-cr-00452
Judge Mary M. Rowland
Magistrate Judge Sunil R. Harjani

Violations: Title 18, United States Code, Sections 1343 and 2315

### COUNT ONE

The SPECIAL OCTOBER 2022 GRAND JURY charges:

1. At times material to this indictment:

    a. The Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.

    *Economic Injury Disaster Loan program*

    b. One source of relief provided by the CARES Act was the expansion of the Economic Injury Disaster Loan ("EIDL") program, which provided loan assistance (including advances of up to $10,000) for businesses with, among other things, 500 or fewer employees, and other eligible entities. The EIDL program was designed to provide economic relief to small businesses that were experiencing a temporary loss of revenue.

    c. To gain access to funds through the EIDL program, small businesses applied through the U.S. Small Business Administration ("SBA") via an

1

online portal and application. As part of the EIDL application process, the SBA required applicants to submit truthful information about the applying business, its owner, and its condition prior to the COVID-19 pandemic. This information included the applicant's number of employees as of January 31, 2020; its gross revenues and cost of goods sold for the 12-month period prior to January 31, 2020; the entity's type of business (i.e., a business, a sole proprietorship, a cooperative, among others); and the date on which the current owner assumed ownership of the business. Applicants were required to electronically certify that the information provided in the application was true and correct and were warned that any false statement or misrepresentation to the SBA may result in sanctions, including criminal penalties.

        d.     EIDL Advance was a grant program offered as part of the EIDL program. EIDL Advance was designed to provide emergency economic relief to businesses that were experiencing a temporary loss of revenue as a result of the COVID-19 pandemic. The applicant could request an EIDL advance in an application for an EIDL loan. The amount of the advance issued to the small business applicant was determined by the number of employees indicated on the EIDL application, $1,000 per employee, up to $10,000. If an EIDL advance was issued, the advance did not need to be repaid.

e. Approval and acceptance of an EIDL loan was not required to receive an EIDL advance. EIDL advances generally were paid to applicants by SBA prior to its decision whether to approve an EIDL loan.

f. If the EIDL loan application was approved by the SBA, the amount of the loan was determined in part based on the statements in the EIDL application about the entity's revenues and cost of goods sold for the 12 months prior to January 31, 2020.

g. EIDL funds were issued to small business applicants directly from the United States Treasury.

h. EIDL proceeds and EIDL advance proceeds were permitted to be used to pay a variety of working capital and normal operating expenses, such as continuation of health care benefits, rent, utilities, and fixed debt payments.

*Paycheck Protection Program*

i. Another source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program implemented by the SBA called the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $320 billion in additional funding for PPP loans.

j. Those seeking a PPP loan were required to submit an application which required the business (through its authorized representative) to acknowledge the program rules and to make certain affirmative certifications

3

regarding its eligibility. In general, operators of sole proprietorships were eligible to apply for a PPP loan if the individual had a business in operation on or before February 15, 2020, had self-employment income, had a principal place of residence in the United States, and filed – or will have filed – an IRS Form 1040 Schedule C for 2019 or 2020.

      k.     The amount of a PPP loan was determined, in part, on the historical amount of self-employment income reflected on the applicant's 2019 or 2020 tax return. Among other things, a self-employed applicant was required to provide a copy of a 2019 or 2020 Form 1040 Schedule C with the PPP application.

      l.     PPP loan proceeds were required to be used by the business for certain permissible expenses – payroll costs, mortgage interest, rent, and utilities. The PPP allowed the interest and principal on a PPP loan to be entirely forgiven by the SBA if the business spent the loan proceeds on these items within a designated period of time and used at least a certain percentage of the PPP loan for payroll expenses.

      m.     To obtain funds through the PPP, small businesses applied through lenders and loan service providers participating in the PPP, and if approved, received the loans from those lenders, either directly or through loan service providers.

      n.     The SBA, participating lenders, and loan service providers required applicants for PPP loans to provide truthful information about the

business and its owner, including truthful information about the business's gross income, the business's employees, and how the PPP loan proceeds would be used, which information was material to lenders' approval, terms, and funding of loans.

        o.     To obtain forgiveness of a PPP loan, the SBA required the borrower to submit to the lender a PPP loan forgiveness application. In the loan forgiveness application, the borrower requested that a specific dollar amount of the loan be forgiven. If the funds were used by the business for eligible purposes and in amounts that complied with PPP loan rules, the SBA would forgive all or part of the PPP loan. For example, if a borrower used all of the loan proceeds for payroll expenses within the time period required by the PPP, SBA would forgive the entire amount of the PPP loan.

        p.     Applicants for PPP loans and for PPP loan forgiveness were required to certify that information contained in the application was true and accurate in all material respects and to acknowledge the applicant understood that knowingly submitting false information to obtain an SBA-guaranteed loan, or forgiveness of an SBA-guaranteed loan, was punishable by criminal prosecution.

*Lender*

        q.     Lender A funded PPP loans to approved borrowers and was headquartered in Arizona. Lender A maintained computer servers that were located outside of Illinois.

2. From on or about June 30, 2020, until on or about November 18, 2021, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOSHUA MCALLISTER,

defendant herein, knowingly devised, intended to devise, and participated in a scheme to defraud, and to obtain money and property, in connection with applications for PPP and EIDL funds, by means of materially false and fraudulent pretenses, representations, and promises, as further described below.

3. It was part of the scheme that defendant, for the purpose of fraudulently obtaining at least approximately $30,832 in PPP and EIDL funds, submitted applications for loans and advances under the PPP and EIDL Programs on behalf of sole proprietorships purportedly owned and operated by defendant; which applications contained materially false statements and misrepresentations concerning, among other things, the purported entities' number of employees, gross revenues, type of business, date of establishment, and existence as companies with ongoing operations.

*June 30, 2020 EIDL application*

4. It was further part of the scheme that defendant prepared and caused to be prepared, and submitted and caused to be submitted to the SBA on June 30, 2020, an application for an EIDL loan and advance; in which application he falsely and fraudulently represented that he was the sole proprietor of a limousine and transportation business that was established in 2016 and had gross revenue of

6

$62,765 in the twelve months prior to January 31, 2020. In fact, as defendant knew at the time that he caused the EIDL application to be submitted to SBA, he was not the sole proprietor of a limousine and transportation business and had not earned gross revenue from such a business in the stated amount in the twelve months prior to January 31, 2020.

5. It was further part of the scheme that, in order to maximize the EIDL advance payment from SBA, defendant falsely and fraudulently represented in the EIDL application that his purported sole proprietorship employed 10 people as of January 31, 2020. In fact, as defendant knew at the time he caused the EIDL application to be submitted to SBA, his purported sole proprietorship did not employ 10 people.

6. It was further part of the scheme that defendant certified in the EIDL application that all information he had submitted to SBA was true and correct to the best of his knowledge, and certified under the penalty of perjury that his certification of truthfulness was true and correct. In fact, as defendant knew at the time he caused the EIDL application to be submitted, those certifications were false.

7. It was further part of the scheme that, through the submission of this false and fraudulent EIDL loan application, defendant caused the SBA to disburse an EIDL advance in the amount of approximately $10,000 into account x9705 maintained by defendant in his own name at Chase Bank.

*April 11, 2021 PPP application*

8. It was further part of the scheme that defendant prepared and submitted to Lender A on April 11, 2021, a PPP loan application, in which application the defendant falsely and fraudulently represented that he was the sole proprietor of a public safety business, established in 2016, that had gross income of $119,632 in 2019. In fact, as defendant knew at the time that he caused the PPP loan application to be submitted, he was not the sole proprietor of public safety business that had gross income of $119,632 in 2019.

9. It was further part of the scheme that, to substantiate the claimed gross income of the purported sole proprietorship in 2019, defendant prepared and caused to be prepared, and submitted and caused to be submitted to Lender A, a copy of a false 2019 IRS Form 1040 Schedule C that fraudulently represented, among other things, that the sole proprietorship had earned $119,632 in gross income in 2019. In fact, as defendant knew at the time that he caused the form to be submitted, his purported sole proprietorship had not earned gross income in that amount.

10. It was further part of the scheme that, when submitting the PPP loan application, defendant attested that the loan request was necessary to support the ongoing operation of his purported sole proprietorship due to the then-current economic uncertainty resulting from the COVID-19 pandemic, and that the information in his PPP loan application was true and accurate in all material

respects. In fact, as defendant knew at the time that he caused the PPP loan application to be submitted, both those representations were false.

11. It was further part of the scheme that, through the submission of the false and fraudulent PPP loan application, defendant caused Lender A to disburse approximately $20,832 in PPP loan proceeds into account x9705 maintained by defendant in his own name at Chase Bank.

12. It was further part of the scheme that on or about November 18, 2021, defendant prepared and caused to be prepared, and submitted and caused to be submitted to the SBA, a PPP loan forgiveness application, in which defendant falsely and fraudulently represented that all of the PPP loan proceeds he received were spent on payroll costs for defendant's purported sole proprietorship. In fact, as defendant knew at the time that he submitted the PPP loan forgiveness application, that representation was false.

13. It was further part of the scheme that defendant misrepresented, concealed, and hid and caused to be misrepresented, concealed, and hidden, certain material facts, including the acts and purposes of the acts done in furtherance of the scheme.

14. On or about July 2, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOSHUA MCALLISTER,

defendant herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, an interstate wire transmission of approximately $10,000, from the Federal Reserve Bank to account x9705 maintained at Chase Bank, which funds represented the proceeds of an EIDL advance;

In violation of Title 18, United States Code, Section 1343.

## COUNT TWO

1. Paragraphs 1 through 13 of Count One are incorporated here.

2. On or about April 11, 2021, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOSHUA MCALLISTER,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely an internet transmission of a PPP loan application to Lender A's computer servers, located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT THREE

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

1. Paragraphs 1 through 13 of Count One are incorporated here.

2. On or about November 18, 2021, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOSHUA MCALLISTER,

defendant herein, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely an internet transmission of a PPP loan forgiveness application to an SBA computer server, located outside of Illinois;

In violation of Title 18, United States Code, Section 1343.

## COUNT FOUR

The SPECIAL OCTOBER 2022 GRAND JURY further charges:

On or about May 20, 2021, in the Northern District of Illinois, Eastern Division, and elsewhere,

JOSHUA MCALLISTER,

defendant herein, received, possessed, concealed, stored, and disposed of money of the value of $5,000 or more, which had crossed a State boundary after being stolen, unlawfully converted, and taken, namely, funds used to purchase a 30-foot boat, knowing the same to have been stolen, unlawfully converted, and taken;

In violation of Title 18, United States Code, Section 2315.

A TRUE BILL:

_____
FOREPERSON

_____
ACTING UNITED STATES ATTORNEY